IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40265
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

EARL RAY ANDREWS, also known as
E. Ray Andrews,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Texas
(6:94-CR-39-1)
_____
February 19, 1996

Before JOLLY, DUHÉ, and DENNIS, Circuit Judges.

PER CURIAM:[*]


    Earl Ray Andrews was convicted on a guilty plea of
interference with commerce by use of a position under color of
official right in violation of the Hobbs Act, 18 U.S.C. § 1951.
Andrews appeals his sentence, contending that the district court
erred in departing upward from the applicable guideline range under
U.S.S.G. § 5K2.7 and § 4A1.3.  We agree in part and hold that the

_____

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

district court erred in departing from the guidelines under §
5K2.7.

I

Andrews served as Henderson County, Texas District Attorney
("D.A.") from June 1, 1992 to August 15, 1994.  As D.A., he had the
sole authority to prosecute or dismiss criminal matters.  Andrews's
office secured a grand jury indictment against Jerry Mack Watkins
in December 1993 for the murder of his wife.  The trial was
scheduled to begin on August 15, 1994.  In July 1994, Andrews
discussed the case against Watkins with Loran Wade Waggoner, who
suggested that Watkins would probably pay Andrews to dismiss the
case.  Waggoner asked Andrews if he could use the money and
Andrews, considering his bleak financial situation, indicated that
he could.  Andrews "agreed that it would be okay for [Waggoner] to
pursue this matter and attempt to ascertain if Watkins would make
a payment."  On August 3, 1994, Waggoner told Andrews that he had
negotiated a $300,000 payment and that he had received $100,000 of
the funds.  Andrews, who was deep into other trouble concerning his
official duties, then advised Waggoner that he could no longer do
anything about Watkins's case because the First Assistant District
Attorney had taken charge of the D.A.'s office.

II

On September 29, 1994, Andrews pleaded guilty to a violation
of the Hobbs Act, 18 U.S.C. § 1951, based on the conduct described
above.  The presentence investigation report ("PSR") recommended a

total offense level of 17 and a criminal history category of I, with a guideline range of 24 to 30 months. Andrews filed objections to the PSR. The district court notified Andrews that it was considering departing upwardly under U.S.S.G. § 5K2.7 for significant disruption of a governmental function and under § 4A1.3 because Andrews's criminal history category did not adequately reflect the seriousness of his past criminal conduct and/or the likelihood of future crimes. At sentencing, the district court overruled Andrews's objections to the PSR, adopted the PSR, and considered Andrews's objections to the proposed upward departures.

After determining that the applicable guideline range did not adequately reflect Andrews's criminal history and potential for recidivism, the district court increased his criminal history score by seven points to category IV, resulting in a guideline range of 37 to 46 months. Based on both § 4A1.3 and § 5K2.7, the court concluded that an upward departure to 60 months was warranted. It limited its departure to 42 months because "some portion of the information [the court] relied on was voluntarily disclosed to the government by Andrews, and it is unlikely that the government would have discovered all of the information without Andrews's cooperation."

## III

The district court may depart from the applicable sentencing range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately

taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1994). We will affirm a departure if the district court offers acceptable reasons for the departure and if the departure is reasonable. United States v. Lambert, 984 F.2d 658, 663 (5th Cir. 1993) (en banc). The decision to depart is reviewed for abuse of discretion. United States v. Laury, 985 F.2d 1293, 1310 (5th Cir. 1993).

Although Andrews challenges the district court's departure under both § 5K2.7 and § 4A1.3, we write solely to address the former.[1] Andrews argues that the district court abused its discretion by departing upwardly under § 5K2.7 because there were unusual circumstances as the guidelines require when some degree of disruption of a governmental function is inherent in the nature of the offense to which he pleaded guilty.[2]

---

[1]Andrews's challenge to the departure under § 4A1.3 is without merit. Andrews argues that the district court improperly considered conduct that the guidelines specifically exclude from consideration as part of a defendant's criminal history. Under § 4A1.3, an upward departure "is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, p.s. Having reviewed the transcript and the district court's opinion, we cannot say that the district court abused its discretion given the reasons it cited to justify the departure.

[2]Section 5K2.7, entitled "Disruption of Governmental Function," provides:
    If the defendant's conduct resulted in a significant
    disruption of a governmental function, the court may
    increase the sentence above the authorized guideline
    range to reflect the nature and extent of the disruption
    and the importance of the governmental function affected.
    Departure from the guidelines ordinarily would not be

The district court recognized that disruption of a governmental function is inherent in a Hobbs Act offense, but found that unusual circumstances warranted a departure upward. The court found that "the State of Texas removed Andrews from office prior to the end of his term, and made other provision for the function of that office until a new district attorney was selected. In addition, future prosecution of a murder charge was potentially jeopardized by Andrews's conduct."

Because the offense of bribery of a public official inherently disrupts a governmental function, the disruption "would have to be quite serious to warrant a departure from the guidelines." U.S.S.G. § 5K2.0, p.s. In United States v. Garcia, 900 F.2d 45, 49 (5th Cir. 1990), we recognized that disruption of a government function was inherent in a mail-theft conviction, but we upheld an upward departure under § 5K2.7 because of the large amount of mail involved and the fact that some of the mail was discarded and never reached its intended destination. The defendant's conduct was so extensive that it caused more disruption than that inherent in the offense. See 900 F.2d at 48-49.

In United States v. Murillo, 902 F.2d 1169 (5th Cir. 1990), the defendant was "in the business" of selling false documents to

justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.
U.S.S.G. § 5K2.7, p.s. (emphasis added).

"countless" illegal aliens and providing for their transportation. We upheld a § 5K2.7 upward departure based on the district court's finding that "the integrity of the amnesty system in the Eastern District of Louisiana [was] severely compromised because of the illegal acts of [the defendant]." Id. at 1174.

The guidelines and these decisions suggest that in reviewing an upward departure under § 5K2.7 for crimes in which governmental disruptions are inherent, we do not look simply at the governmental disruptions and ask whether they are "unusual" or "quite serious" within themselves. Instead we ask whether the disruptions are "unusual" or "quite serious" in the light of the particular crimes. Thus, we first focus on the general nature of the particular charged offense--a district attorney accepting a bribe--and the governmental disruption normally associated with such offense. We then evaluate the conduct and circumstances of the actual offense to determine whether the disruption significantly exceeded the disruption normally associated with such an offense so as to justify a sentence above the sentence provided by the guidelines. The disruption cited by the district court simply is not unusual when viewed in the context of a case involving bribery of a district attorney. It is certainly not unusual for such conduct to jeopardize the prosecution of the case for which the bribe is offered. Nor is it unusual for such conduct to result in the prosecutor leaving office. Furthermore, the disruption was not made unusual by the extensiveness of the corruption; the disruption

resulted from only one instance of bribery involving only one case. In contrast, the defendant's criminal acts in <u>Garcia</u> affected truckloads of mail, 900 F.2d at 46, and the defendant in <u>Murillo</u> sold false documentation to "countless" illegal aliens. 902 F.2d at 1170. We surely do not wish to minimize the disruptions that were occasioned by Andrews's criminal acts. We hold only that the disruptions here--a jeopardized prosecution and a prosecutor's resignation--are not unusual governmental disruptions when a prosecutor is caught accepting a bribe. We thus hold that the reasons stated by the district court are insufficient to justify departure under § 5K2.7 for disruption caused by Andrews's offense and, consequently, the district court abused its discretion in enhancing Andrews's sentence on this basis.

IV

For the foregoing reasons, we VACATE the sentence and REMAND to the district court for resentencing. <u>See</u> <u>Williams v. United States</u>, 112 S.Ct. 1112, 1120 (1992) (holding that when a district court has intended to depart from the guideline range remand is required if the sentence would have been different but for the district court's misapplication of the guidelines).

VACATED and REMANDED.